In the matter of the CHURCH & GRAVES MANUFACTURING COMPANY, Insolvent.

January 14, 1889.

Insolvency — Prior Judgment against Insolvent — Lien on Real Estate.—The appellant recovered and docketed judgment against the insolvent, December 9, 1887: February 15, 1888, the insolvent made an assignment of its property for the benefit of its creditors under Laws 1881, c. 148.  *Held*, that the assignment did not affect the judgment, nor its lien on real estate.

Same—Preference.—Also that the only way in which the assignee may avoid the judgment or lien is by action under section 4 of the chapter.

Same—Enforcement of Judgment.—Also that, as the chapter contains no provision under which the assignee or receiver may sell the property free from incumbrances, and distribute the proceeds to those entitled, first to lienholders according to their priorities, and then to the general creditors, nor any whereby the lienholder may foreclose his lien in the insolvency proceeding, he may, unless his lien is impeached as provided in section 4, proceed and enforce his lien just as though there had been but a common-law assignment.

Appeal by the Mille Lacs Lumber Company and Peter P. Swensen, as sheriff, from an order of the district court for Hennepin county, *Young*, J., presiding, made in the above-entitled matter, setting aside a levy, etc.

*T. R. Palmer*, for appellants.

*Cross & Carleton*, for respondent.

GILFILLAN, C. J.   On the 15th February, 1888, the above-named company, a corporation, executed an assignment of all its property for the benefit of its creditors, under and pursuant to Laws 1881, c. 148.   On December 9, 1887, the Mille Lacs Lumber Company recovered in the district court, in Hennepin county, a judgment for a large sum against said assigning corporation, which judgment was on said day duly docketed in said county.   The complaint on which said judgment was entered was not filed till the day of such entry. After the filing of said assignment, execution was issued on said

judgment, and on February 21, 1888, levied upon real estate belonging to the judgment debtor at the date of the assignment. On April 16, 1888, in said insolvency proceeding, the district court, on the application of the assignee, made an order dissolving the levy of said execution, directing the execution to be returned, the levy to be released and discharged of record, and enjoining the judgment creditor from issuing any further execution on said judgment until the estate of the judgment debtor shall be closed under the direction of the court, and distributed according to law, and until the final order of the court. From this order the Mille Lacs Lumber Company appeals.

The respondent makes, in support of the order, this proposition,— and the order cannot be sustained by any less radical proposition,— that, because the complaint on which the judgment was entered was not filed 20 days before the entry thereof, the lien of the judgment upon the land ceased upon the making of the assignment and qualifying of the assignee.

Section 2 of chapter 148 makes it a cause for the appointment of a receiver that a debtor, being insolvent, confesses judgment, or does any act or makes any conveyance whereby one creditor shall obtain a preference over the others, or omits to do any act which he might lawfully do to prevent any one of his creditors from obtaining preference contrary to the intent of the act. Though merely suffering judgment to be taken is not expressly mentioned in section 2, yet, as section 3 makes it a misdemeanor for an insolvent debtor either to confess or suffer judgment with intent that any one of his creditors shall obtain a preference over any other of his creditors, the so suffering judgment to be taken with that intent is a cause for appointing a receiver. Section 4 provides for the assignee or receiver avoiding, by action, conveyances and payments made and securities given (which would in some cases, at any rate, include judgments entered) by any insolvent debtor, or a debtor in contemplation of insolvency, within four months of making an assignment as provided in section 1, with a view of giving a preference, etc. These are the only provisions of the act that may be regarded as inhibiting the entering of judgment, and in each instance the confessing or suffering it must be tainted

with the intent to give a preference in order to make it obnoxious to the act. Of all the act after section 1, section 4 is the only one which has reference to avoiding or defeating a judgment or any of its incidents; and it is clear that to avoid it, (unless section 1 in some way works that result,) an action for the purpose must be brought by the assignee or receiver, in which it must appear that the judgment was entered within four months of making the assignment, with intent to prefer the judgment creditor, and that he had reasonable cause to believe that the debtor was insolvent.

This case does not come within that class of cases, for this is not an action by the assignee. As there is no other case, except as provided in section 4, in which the judgment or any of its incidents may be defeated by the action of the court, it must be evident that the order appealed from cannot be sustained, unless, under the provisions of section 1, the judgment ceased to be a judgment, or the previously existing lien ceased to be a lien, by and from the mere fact that the judgment debtor made an assignment of all its property for the benefit of all its creditors, not within 10 days from the entry of judgment and the accruing of the judgment lien, (if that is to be regarded as an event making it the debtor's duty, under that section, to make an assignment,) but more than 60 days after it. Section 1 makes no mention of judgment liens, nor even of judgments, except to provide what cases of levy shall not come within it.

In this case there was no levy such as the section aims at. That refers only to levies or garnishments prior to the assignment, and which, but for the provisions of the section, might take precedence of it. The section was unnecessary to protect the assignee's title and possession against levies made after that title accrued. It may be doubted (though it is not necessary to decide) that a prior levy of execution on real estate comes within the meaning of the section, for such a levy creates no lien. The lien arises upon the docketing of the judgment; and it is only such levies as create liens that are within the spirit of the section. If we could hold that the entry and docketing of judgment, from which the lien accrued, were, within the spirit and intent of the act, equivalent to the levy of an execution or attachment, still the section does not avoid them; for, to bring about

that consequence, the assignment must be made within 10 days after the levy. *Fairbanks* v. *Whitney*, 36 Minn. 305, (30 N. W. Rep. 812.) Where more than that time has elapsed, any lien which may operate as a preference must be assailed by the assignee by action, as provided in section 4 of the act. Here the assignment was not made till more than 60 days after the entry and docketing of the judgment. The judgment lien was not affected by the assignment. It still exists in as full force as ever. The assignee took the real estate subject to it, but with the right to avoid it, if he can, under the provisions of section 4. Of course, in an action to avoid it, the court may *pendente lite* restrain any attempt to enforce the judgment, or to do any act tending to defeat or embarrass the purpose of the action. Except where such a proceeding is taken, we see nothing in chapter 148 to prevent the creditor enforcing his lien by execution, just as he might do in the case of a common-law assignment.

Under the United States bankrupt law, the power of the bankrupt court to deal with the bankrupt's property, and appropriate it to those entitled to it according to their priorities, was ample. The property, and all liens upon it, were in the court. As a consequence, a lienholder could not, while the property remained in the bankrupt court, proceed by execution or action to enforce his lien, but had to apply for relief to the bankrupt court. There is no such feature in chapter 148. It is evidently the theory of that chapter that the assignee or receiver takes the property and deals with it as a common-law assignee would; takes it and disposes of it subject to all valid liens against it at the date of the assignment. There is nothing in the act—no power given to the court or to the assignee or receiver—looking to his disposing of the property free of incumbrances, for the benefit of all persons interested in it, and distributing the proceeds to those entitled, first to the lienholders according to their priorities, and then to the general creditors. The act does not provide any means whereby a lienholder may enforce his lien in the insolvency proceeding, and there is nothing in the act prohibiting him from enforcing it in the usual way. The appellant ought to have been allowed to proceed on its execution.

Order reversed.